OPINION
{¶ 1} This case is before us on the appeal of Patsy Sue Whitt (Patsy) from a final order of distribution on an inter vivos trust. After various items were deducted, including legal fees the trust incurred in defending multiple legal actions involving Patsy's claims against the trust and a co-beneficiary of the trust, Patsy was awarded $43,938.92. Gregory Whitt (Gregory), the co-beneficiary and son of Patsy's late husband, was awarded $79,173.21.
 {¶ 2} In support of her appeal, Patsy raises the following assignments of error:
I. The trial court abused its discretion when it reduced the Appellant's share of the trust by one half of the amount the trust spent in legal fees.
II. The trial court abused its discretion in reducing the Appellant's trust share for house expenses, paying the trustee a fiduciary fee and paying Sebaly, Shillito Dyer attorney fees without conducting a hearing and making findings of fact to support its decision.
 {¶ 3} After considering the record and applicable law, we find the assignments of error without merit. Accordingly, the judgment of the trial court will be affirmed.
 I {¶ 4} Cases involving this trust have been before us on two previous occasions, although they were heard by a panel of judges from the Twelfth District Court of Appeals. Whitt v. Whitt,
Greene App. No. 02-CA-20, 2003-Ohio-3047, was an action that Patsy brought to cancel, rescind, or reform a quitclaim deed. The other case was an eviction action brought by Patricia Whitt against Patsy Whitt. See Whitt v. Whitt, Greene App. No. 02-CA-93, 2003-Ohio-3046. The factual background of all these cases is the same. Basically, in February, 2001, Patsy and her husband, Donnie, jointly owned a single-family home and a joint bank account, both with rights of survivorship. At the time, Patsy and Donnie had been married about 30 years. Because Donnie wished to leave property to an adult son from a prior marriage (Gregory), he executed a revocable trust, to which he transferred his interest in the house and bank account. Patsy received $200,000 from the joint account to put in an account in her own name. She then also executed a quitclaim deed transferring her ownership in the house to the trust, which was known as "The Donnie J. Whitt Revocable Family Trust" (Trust). Donnie was listed as the grantor and trustee, and Donnie's brother, Billy Whitt, was named as successor trustee.
 {¶ 5} The Trust terms provided that the grantor had the power, during his lifetime, to withdraw all or any part of the principal and/or net income of the trust estate. Upon the grantor's death, any real property or other tangible assets were to be sold. The Trust proceeds were then to be distributed according to a formula that included adding $200,000 to the trust asset amount (the distribution amount). Donnie's son, Gregory, was to receive one half of the distribution amount, and Patsy was to receive the other half of the distribution amount, less $200,000.
 {¶ 6} Donnie died shortly after the trust was created, and the house was sold for $400,000 to Patricia Whitt. Patricia was Gregory's mother and Donnie's ex-wife. To fund the purchase price, Gregory pledged $200,000 of his share of the trust assets. After the sale was completed, Patricia filed an eviction action against Patsy. Patsy then filed a complaint, asking for reformation, cancellation, or recission of the deed, based on alleged undue influence exerted by Donnie and by Deborah Hunt, the attorney who had prepared the quit-claim deed.
 {¶ 7} The trial court in that case found, after a trial, that Patsy was not unduly influenced. That decision was affirmed on appeal. Whitt, 2003-Ohio-3047, at ¶ 32. However, the trial court's decision dismissing counterclaims against Patsy for abuse of process, slander of title, and attorney fees was reversed and remanded for further hearing. Id.
 {¶ 8} In the meantime, summary judgment was granted in Patricia's favor in the eviction action. That decision was also affirmed on appeal. Whitt, 2003-Ohio-3046, at ¶s 1 and 24. In particular, the appellate court rejected Patsy's claim that she did not relinquish dower rights by signing the quit-claim deed, and her claim that no consideration existed for execution of the quit-claim deed. Id. at ¶s 8-15.
 {¶ 9} Both appellate decisions were issued on June 13, 2003. Previously, on May 13, 2002, Patsy had filed the complaint that is the subject of the present action. This complaint was filed against Billy Whitt (the successor trustee), and Gregory. Among other things, the complaint alleged that the trustee had misapplied funds by paying attorney fees, had sold the real property without requiring full payment, had given one beneficiary an early distribution contrary to trust terms, and had otherwise failed to properly execute his duties. Gregory was added as a party who might have an interest in the trust funds.
 {¶ 10} On June 13, 2002, Gregory filed an answer, alleging as an affirmative defense that the complaint had been brought in bad faith as part of a pattern of vexatious litigation. He requested that the complaint be dismissed and that attorney fees be awarded. The trustee subsequently filed a motion to dismiss, contending that the complaint failed to state a claim. After a conference was held, the trial court filed a judgment entry indicating that the motion to dismiss would be continued in anticipation of the filing of an amended complaint to remove the trustee. Although an amended complaint was never filed, Patsy filed a "motion for disposition of funds" on July 2, 2003. In the motion, Patsy asked the court to decide that the Trust terms required disposition to her of approximately $200,000 that remained in the Trust.
 {¶ 11} Following this motion, and after a pretrial conference, the trial court filed a judgment entry indicating that the Trust was supposed to be closed upon the sale of the real estate. The court noted that the real estate had been sold and that Patsy was being evicted from the property. Accordingly, the court ordered distribution of $40,000 to Patsy, with the balance to be retained by the court until either the probate court or the general division of the common pleas court resolved the issue of whether Patsy's behavior had unfairly cost the Trust money that should be taken from her share. The court directed the trustee to file a summary accounting within 40 days, and also stated that the Trust should be closed within three months.
 {¶ 12} Subsequently, the probate court ordered that a hearing take place on final trust distribution on September 17, 2003. The trustee then filed a summary account of activities from inception through July 17, 2003.
 {¶ 13} All the parties appeared at the hearing with their attorneys. No witnesses were sworn, but the attorneys and clients each made statements about charges to the Trust and potential distribution of remaining funds. The trial court also made various comments about the proceeding, as well as other litigation that had occurred. Ultimately, the trial court filed a judgment entry, finding that the Trust balance was $151,189.01, as of August 15, 2003. After subtracting additional fees paid to the Trust attorneys (Sebaly, Shillito Dyer) (Sebaly), the balance for distribution was $143,612.13. The court awarded Sebaly additional legal fees of $4,000 for all remaining legal services to be provided. In addition, the court found that $39,747.74 of Sebaly's legal fees were due to Patsy's multiple legal actions. As a result, the court subtracted one-half of these fees from Patsy's share and added that amount to Gregory's share. The effect was that Patsy was responsible for the entire amount of litigation fees. Further, the court subtracted house expenses incurred after the original closing date ($4,129.14) from Patsy's share, and added that sum to Gregory's share. This appeal then followed.
 II {¶ 14} In the first assignment of error, Patsy contends that the trial court abused its discretion by reducing her share of the trust for legal fees. Patsy attacks this decision on several grounds: (1) that the court failed to conduct a hearing in compliance with the requirements of R.C. 2323.51; (2) that the court failed to find that she engaged in frivolous conduct; and 3) that the court failed to make appropriate factual findings.
 {¶ 15} In response, the trustee claims that Patsy waived arguments about R.C. 2323.51 by failing to object or to raise the matter at the hearing.
 {¶ 16} Ohio follows the general rule that attorney fees may not be awarded "in the absence of statutory authorization or a finding of conduct that amounts to bad faith." Pegan v.Crawmer, 79 Ohio St.3d 155, 156, 1997-Ohio-176. R.C.2323.51(B)(1) provides such statutory authorization, by allowing attorney fees to be recovered where a party has engaged in frivolous conduct. However, under the statute, before the trial court can make such an award, it must:
 {¶ 17} "do three things: (1) set a hearing date to determine whether particular conduct was frivolous and, if it was, to determine whether any party was adversely affected by it, and to determine the amount of an award, if one is to be made, R.C.2323.51(B)(2)(a); (2) give notice of the date of the hearing to each party who allegedly engaged in frivolous conduct or who was allegedly adversely affected by it, R.C. 2323.51(B)(2)(b); and (3) conduct the hearing described in R.C. 2323.51(B)(2)(a), allowing the parties and counsel of record to present any relevant evidence, including, as described in R.C. 2323.51(B)(5), evidence of legal services, time expended, and attorney fees associated therewith, necessitated by the alleged frivolous conduct, and determine whether the alleged conduct was frivolous, and whether a party was adversely affected by it, and then determine the amount of the award to be made, R.C.2323.51(B)(2)(c)." Riley v. Langer, 95 Ohio App.3d 151,157-158.
 {¶ 18} Some of these requirements may be waived. For example, if parties appear at a fee hearing and choose to present arguments rather than evidence, objections to such a procedure are waived. Murrell v. Williamsburg Local School Dist. (1993),92 Ohio App.3d 92, 96. Because Patsy appeared at the hearing and chose to proceed without presenting testimony, she has waived the opportunity to contest that procedure on appeal. This does not resolve the matter, however, since no motion for attorney fees was ever filed.
 {¶ 19} In this regard, R.C. 2323.51(B)(1) states that a court may award reasonable fees to any party adversely affected by frivolous conduct, "[s]ubject to divisions (B)(2) and (3), (C), and (D) of this section, at any time prior to the commencement of the trial in a civil action or within twenty-one days after the entry of judgment in a civil action * * *." Emphasis added. Division R.C. 2323.51(B)(2) further provides that "[a]n award may be made pursuant to division (B)(1) of this section upon themotion of a party to a civil action * * *." Emphasis added.
 {¶ 20} Again, some statutory requirements may be waived. For example, the twenty-one day limitation period may be waived if a party fails to object. Mason v. Meyers (2000),140 Ohio App.3d 474, 477. However, the filing of a motion for fees cannot be waived, since R.C. 2323.51 does not give trial courts authority to raise the matter on their own motion. Instead, the statute specifically says that an award may be made upon the motion of a party.
 {¶ 21} The parties in the present case could have filed a motion under R.C. 2323.51, but chose not to do so. Compare Leonv. Caroselli (May 21, 1997), Hamilton App. Nos. C-960364, C-960612, 1997 WL 266761, *1 (after trial, beneficiary filed motion for attorney fees under R.C. 2323.51). In view of these facts, the trial court could not have properly awarded attorney fees under R.C. 2323.51, and any attempt to do so would have been erroneous.
 {¶ 22} However, the trial court could still award fees, based on an exception that exists "`"when the party against whom attorney fees are sought to be taxed is found to have acted" * * * in bad faith, vexatiously, wantonly, obdurately, or for oppressive reasons * * *'" Green v. Lemarr (2000),139 Ohio App.3d 414, 435. Such awards are within the court's inherent power, and are reviewed for abuse of discretion. Curtis v.Curtis (2000), 140 Ohio App.3d 812, 815. This means "`more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" Blakemore v.Blakemore, (1983), 5 Ohio St.3d 217, 219.
 {¶ 23} After reviewing the record, we find that the trial court intended to award fees based on the fact that Patsy Whitt acted vexatiously, or in bad faith. We also find that the court did not abuse its discretion. The court was obviously familiar with the multiple actions that had been filed concerning the trust estate. At the hearing, the court noted that Patsy, along with her late husband, was actually responsible for placing the property into the Trust. The court then said that while Patsy was originally willing to honor her husband's request that half of their property be given to his son, she later showed some bad faith. Additionally, the court commented that the trustee had incurred significant expenses because of Patsy's inappropriate legal response. The court concluded, as a result, that Patsy's share of the Trust should be diminished. Consistent with these comments, the court later stated in the judgment entry that a significant part of the legal expense was incurred due to Patsy's multiple legal actions.
 {¶ 24} According to Patsy, the award of attorney fees was an abuse of discretion because the trial court also said in the hearing that it was not so sure that Patsy's action for undue influence was frivolous. However, these comments occurred some time after the court had already made a finding of bad faith. They also occurred during discussion of another point, i.e., whether Patsy had threatened to spend every penny in the Trust in order to make sure that Gregory did not get a cent. The trial court observed that it tended to agree that Patsy may have made such statements. However, the court also stressed that it did not have to decide the point. From this, we conclude that the trial court felt its prior findings were sufficient for a bad faith or vexatious award of attorney fees. We agree with that observation. The court went on to discuss the fact that Patsy had made many comments during litigation, and was obviously angry about what had happened. During the course of these remarks, the court made the comment about the alleged frivolity of the action for undue influence. From the tenor of the discussion, the court appears to have been attempting to give Patsy the benefit of the doubt, even though the court had already concluded that she acted in bad faith. In this regard, we note that the total attorney fees and costs for the Trust were about $48,300. However, the court awarded only the part of the expenses attributable to Patsy's multiple legal actions, i.e, $39,747.74. The court also reduced the trustee's requested fee from $8,000 to $6,000, and reduced the request for additional attorney fees for all remaining legal services provided and to be provided from $5,816.27 to $4,000. These decisions indicate an effort to be fair, even though the court was obviously disturbed by Patsy's conduct. Accordingly, we find that the trial court did not abuse its discretion in allocating part of the attorney fees to Patsy.
 {¶ 25} As a final point, we note that Ohio courts allow reasonable attorney fees as part of administration expenses, when attorneys are used to administer a trust estate. Diemert v.Diemert, Cuyahoga App. No. 82597, 2003-Ohio-6496, at ¶s 23-24, and Miller v. Harrison ex rel. Roxanne Sparr Harrison RevocableLiving Trust, Greene App. No. 2003 CA 6, 2004-Ohio-173, at ¶ 13. The Trust, itself, in this case also gave the trustee and successor trustee the power to employ agents, including attorneys, to aid in administering the estate. The power to employ agents necessarily includes the ability to pay them reasonable fees for their work.
 {¶ 26} Some dispute does exist concerning whether such fees should be apportioned equally among the beneficiaries or whether they should be apportioned according to the beneficiary's interest in the estate. Compare In re Estate of Wiehe (May 9, 1984), Hamilton App. No. C-830419, 1984 WL 6890, *3 (fees apportioned according to interest), with In re Estate ofColeman (1988), 55 Ohio App.3d 261, 264 (burden of administration expenses is to be shared equally). However, this dispute is irrelevant for purposes of the present case, since the two beneficiaries shared equal interests in the trust estate. The pertinent point is that Patsy would have been liable for one-half the disputed fees, or about $19,873, in any event. Under the circumstances, the fact that she was asked to bear the remaining $19,873, was not an abuse of discretion.
 {¶ 27} Based on the previous discussion, the first assignment of error is overruled.
 {¶ 28} In the second assignment of error, Patsy contends that the trial court abused its discretion by reducing her trust share by $4,129.14 for house expenses incurred after the original closing date on the house, by paying the trustee's $6,000 fiduciary fee, and by paying $4,000 in additional attorney fees without holding a hearing and making findings of fact to support its decision. However, Patsy waived these arguments by failing to object to the procedures used at the hearing. Murrell v.Williamsburg Local School Dist. (1993), 92 Ohio App.3d 92, 96. Patsy could have presented testimony and evidence, but she chose to simply appear at the hearing and make a statement. Furthermore, the trial court did include findings of fact and conclusions of law in the judgment entry.
 {¶ 29} Patsy claims the court's factual findings were not sufficiently detailed and amount to an abuse of discretion. Again, we disagree. The original fee amounts were not excessive. Moreover, the court reduced the fees below the initial requests. In view of these facts, it is hard to see how the court's action could be labeled arbitrary or unreasonable. Facts were also were presented at the hearing that justified the fees and the house expenses. As a result, the trial court acted within its discretion by choosing to credit the trustee's statements. Accordingly, the second assignment of error is also without merit and is overruled.
 {¶ 30} One final item needs to be discussed, and that is the trustee's request that we address new changes in the trust assets. Allegedly, these changes include: (1) interest accumulated since the trial court hearing; (2) additional tax return expenditures; (3) attorney fees incurred in the appeal; and (4) another fiduciary fee. The trustee has asked us to either address those changes in this appeal, or remand the case to the probate court. The trustee prefers that we rule on the matter, and has even suggested an appropriate "breakdown" of how we should credit these fees and expenses. We find the trustee's request without merit.
 {¶ 31} The rule is well-established that "`[a] reviewing court cannot add matter to the record before it, which was not part of the trial court's proceedings, and then decide the appeal on the basis of the new matter.'" State ex rel. Fogle v.Steiner, 74 Ohio St.3d 158, 162, 1995-Ohio-278, quoting Statev. Ishmail (1978), 54 Ohio St.2d 402, paragraph one of the syllabus. In view of the long-standing and clear nature of this rule, litigants should know that appellate courts cannot decide matters that were not part of the trial court record. Furthermore, even if appellate courts had such powers, they would not exercise them based on unverified facts and suggestions in briefs.
 {¶ 32} Based on the above discussion, both assignments of error are overruled, and the judgment of the trial court is affirmed.
Fain, P.J., and Grady, J., concur.