DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Ottawa County Court of Common Pleas which awarded plaintiffs-appellees, Joseph and Laura Caserta, nominal compensatory damages of $100 for defendants-appellants, Mary Pat and Thomas Connolly's, continuing trespass on their property and punitive damages of $5,000 for appellants' actual malice. Appellants have raised the following assignments of error from that judgment:
 {¶ 2} "1. It constituted error for the trial court to find that appellants acted with actual malice.
 {¶ 3} "2. It constituted error to award punitive damages without proof of compensatory damages."
 {¶ 4} On August 23, 2000, the Casertas filed a complaint in the lower court against the Connollys, as well as the Ottawa County Auditor and the Ottawa County Treasurer, for declaratory judgment and to quiet title. The Casertas alleged that a red shed and its concrete base located on the Connollys' property encroached on the Casertas' property by between 1.60 feet and 1.69 feet and that such encroachment constituted a trespass. The complaint further alleged that the Casertas had asked the Connollys to remove the encroachment from their land but that the Connollys had refused and continue to trespass upon the Casertas' land. The Casertas asked the court to declare them to be the true and lawful owners of the encroachment, to declare that the Connollys were trespassers upon their land and to order the Connollys to remove the shed and concrete slab encroachment from the Casertas' land at the Connollys' cost. The Casertas also asked the court for an order quieting title to the encroachment, and for damages in excess of $25,000 for the Connollys' continuing trespass. In their answer, the Connollys admitted the allegations contained in paragraphs nine and ten of the complaint which read: "9. Plaintiffs have on several occasions notified the Connollys, in writing, of the existence of the shed encroachment and requesting that they remove the shed encroachment from Plaintiff's land. 10. The Connollys have failed to respond to Plaintiffs' requests and have refused to remove the shed encroachment."
 {¶ 5} On August 19, 2002, the case proceeded to a bench trial at which Joseph Caserta, Laura Caserta, Mary Patricia Connolly, and Michael Thorbahn, a licensed surveyor testified. In addition, the Casertas submitted the videotaped testimony of Garrett Woytyshyn, another licensed surveyor. At the conclusion of the trial, the court asked the parties to submit proposed findings of fact and conclusions of law, which they did. Thereafter, the lower court issued a decision and judgment entry in which it adopted the findings of fact and conclusions of law submitted by the Casertas, finding that they fully and accurately represented the evidence adduced at trial and the principles of law governing the same. Those findings of fact are summarized as follows:
 {¶ 6} Joseph D. Caserta and Laura E. Caserta, are the owners of Lots 60 and 61 in Block B of Long Beach Subdivision situated in Carroll Township, Ottawa County, Ohio. The Casertas acquired title to their lots by deed recorded September 11, 1997 at Volume 419, Page 878, Ottawa County Deed Records. Mary Pat Connolly, is the owner of Lot 62 in Block B of Long Beach Subdivision situated in Carroll Township, Ottawa County, Ohio. Connolly acquired title to her lot by deed recorded August 21, 1998 at Volume 428, Page 247, Ottawa County Deed Records. Lot 61 and Lot 62 adjoin each other, with their common lot line being the west line of Lot 61 and the east line of Lot 62. When the Casertas purchased Lots 60 and 61, Lot 62 was owned by Marie Schnabel. Shortly after they purchased their lots, the Casertas obtained a survey from the M. Freels Survey Company (the "Freels survey") that was prepared by Garrett Woytyshyn, a registered surveyor. That original Freels survey was prepared on September 23, 1997 and showed two encroachments from Lot 62 onto Lot 61. One encroachment was a concrete pad on which a shed had been placed and the other was a porch on the east side of the Schnabel house.
 {¶ 7} In June 1998, a tornado blew down trees on Lot 62 and onto the Schnabel house. The subsequent cleanup of the property included the removal of the house and the concrete porch slab that had encroached onto Lot 61. After the cleanup, all that remained on Lot 62 was the foundation of the house, the shed and its concrete slab.
 {¶ 8} After Mary Pat Connolly's purchase of Lot 62 from Marie Schnabel in August 1998, Joseph Caserta informed Mary Pat's husband Thomas Connolly, a practicing attorney, that the shed and its concrete slab encroached on the Casertas' property and asked that they be removed. Laura Caserta later telephoned Thomas Connolly to again ask that the shed and slab be removed from the Casertas' property as the Casertas were about to begin building their house. During that conversation, Laura Caserta told Thomas Connolly the name of the surveyor who had completed the survey in 1997. Subsequently, Joseph Caserta had his second conversation with Thomas Connolly about the encroachments at which time Thomas Connolly stated that he would remove the encroachments when a judge told him to, three years and $15,000 later. The Casertas then contacted their attorney who wrote one or more letters to Mary Pat Connolly concerning the encroachments. When neither Mary Pat nor her husband responded to the correspondence, the Casertas filed the instant action.
 {¶ 9} Sometime after being informed of the encroachments, the Connollys engaged the services of Roy E. Yeager, a surveyor to survey Lot 62. Although Yeager set iron pins within one inch of the pins set by the Freels survey, Yeager did not complete a survey sketch. The Connollys then engaged the services of Michael J. Thorbahn, a surveyor with Brunkhorst Engineering Consultants, Inc. to survey their lot. That survey, completed in October 2001, found that the southeast corner of Lot 61 was 1.22 feet west of where the Freels survey set the corner and that the northeast corner was .48 feet west of where the Freels survey set the corner. After that survey was completed, the Connollys attempted to move the shed. Notwithstanding that attempt and even under the Brunkhorst survey, the Connollys' shed still encroached some 2 to 5 inches onto the Casertas' property.
 {¶ 10} Comparing the Freels and Brunkhorst surveys and considering the general rules of surveying, the lower court found that the Freels survey accurately established the common line between Lots 61 and 62. The court further found that the Connollys maintained their shed and concrete base slab as a willful continuing trespass on the Casertas' property for which the Casertas were entitled to compensatory damages. Finally, the court found that the comments by Thomas Connolly to Joseph Caserta, coupled with the Connollys' ignoring the Casertas' requests to remove the encroachments and failure to respond to letters from the Casertas' attorney before the instant suit was filed established actual malice involving a state of mind characterized by ill will, entitling the Casertas to punitive damages. The court also found that the Casertas were entitled to attorney fees.
 {¶ 11} Based on its findings of fact, the court concluded that the Casertas were the true and lawful owners of Lots 60 and 61, including that portion of Lot 61 upon which the Connollys' shed and concrete slab encroached as shown by the Freels survey. The court then awarded the Casertas nominal compensatory damages of $100 for the Connollys' continuing trespass and punitive damages of $5,000 for the Connollys' actual malice as evidenced by a state of mind characterized by ill will against the Casertas. The Connollys now challenge the award of punitive damages.
 {¶ 12} Because the assignments of error are related they will be discussed together. The Connollys assert that the trial court erred in awarding the Casertas punitive damages where the Casertas failed to present evidence of actual damages and failed to establish by clear and convincing evidence that the Connollys acted with actual malice.
 {¶ 13} R.C. 2315.21(B) permits an award of punitive damages in a tort action where the actions or omissions of a defendant demonstrate actual malice and the plaintiff proves actual damages as a result of those actions or omissions. The plaintiff must prove by clear and convincing evidence his right to recover punitive damages. R.C. 2315.21(C). Clear and convincing evidence is that degree of proof which establishes in the mind of the trier of fact a firm conviction as to the allegations sought to be proved. Cross v. Ledford (1954), 161 Ohio St. 469. InPreston v. Murty (1987), 32 Ohio St.3d 334, syllabus, the Supreme Court of Ohio held that "[a]ctual malice, necessary for an award of punitive damages, is (1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." The reason behind awarding punitive damages in Ohio "* * * has been recognized * * * as that of punishing the offending party and setting him up as an example to others that they might be deterred from similar conduct."Detling v. Chockley (1982), 70 Ohio St.2d 134, 136, overruled on other grounds in Cabe v. Lunich (1994), 70 Ohio St.3d 598. Since punitive damages are assessed for punishment and not compensation, a positive element of conscious wrongdoing is always required.
 {¶ 14} "A common-law tort in trespass upon real property occurs when a person, without authority or privilege, physically invades or unlawfully enters the private premises of another whereby damages directly ensue, even though such damages may be insignificant." Linley v. DeMoss (1992), 83 Ohio App.3d 594,598. In Ohio, it is well-settled that "once a party proves that he has been trespassed against[,] that party has a right to nominal damages without specifically proving actual damages."Fairfield Commons Condominium Assn. v. Stasa (1985),30 Ohio App.3d 11, 20. Nominal damages, however, are not the actual damages that are a prerequisite to an award of punitive damages.Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 82;Little Beaver Creek Valley RR. and Historical Society, Inc. v.P.L. W. RR., Inc. (June 10, 1998), 7th Dist. No. 95-CO-76.
 {¶ 15} In its judgment entry, the trial court awarded appellees $100 in "nominal compensatory damages." Nothing in the record, however, supports a conclusion that this was in any way an award of actual damages. Indeed, appellees did not put forth any evidence that they were actually damaged in any way by the encroachment onto their land. Appellees assert that damages could be presumed because they had to have two surveys conducted to establish the boundary of their property. At the trial below, however, appellees did not present any evidence regarding the costs of those surveys and the trial court did not grant them an award for the costs of those surveys. Moreover, the first survey was conducted before the Connollys purchased Lot 62. There was also no evidence presented below that appellees' property was physically damaged by the encroachment, as was the case in Apelv. Katz (1998), 83 Ohio St.3d 11. Finally, appellees were not subject to the expense of removing the encroachment as the trial court, by adopting appellees' findings of fact and conclusions of law, ordered the Connollys to remove the encroachment at their expense. In sum, the trial court did not award the Casertas the actual damages that are a prerequisite to an award of punitive damages, and, as such, the trial court was without the authority to award appellees punitive damages.
 {¶ 16} Assuming arguendo that the nominal damages award did amount to an award of actual damages, we further conclude that the Casertas failed to present the trial court with clear and convincing evidence that the Connollys acted with actual malice. The court's finding of actual malice was based on "the comments of defendant's husband/attorney to Joseph Caserta, coupled with defendant's ignoring the requests of plaintiffs to move the encroaching shed and her lack of response to the letters from defendant's [sic] attorney concerning this matter prior to suit being filed." Initially, we note that the court's finding that the Connollys ignored the Casertas' requests and failed to respond to letters from their attorney, was based on the Connollys' answer to the complaint in which they admitted the allegations in paragraphs nine and ten of the complaint. These pleadings, however, were never admitted into evidence at the trial and as such could not be considered by the court as evidence. See Hoaglin Holdings, Ltd. v. Goliath Mortgage, Inc.,
8th Dist. No. 83657, 2004-Ohio-3473, ¶ 17. Moreover, the record establishes that after the Casertas notified the Connollys of the survey results, the Connollys undertook to have their own survey conducted and the Casertas knew of this effort. The first survey that the Connollys contracted for was never completed. The second survey, which was completed, also showed that the shed and concrete slab encroached onto the Casertas' property but by different amounts. The Casertas filed suit before the Connollys' second survey was completed. It was not unreasonable, given the differing survey results, for the Connollys to then wait for the court to determine which survey was correct before taking action to remove the encroachment. In its judgment entry adopting the Casertas' proposed findings of fact and conclusions of law, the court determined that the Freels survey accurately defined the border between the parties' properties.
 {¶ 17} In boundary disputes, parties will frequently fight for every square inch of land. It is not "actual malice" to refuse to blindly accept a neighbor's survey of their property. This is not a situation, such as that presented in Horner v.Whitta (July 27, 2000), 3d Dist. No. 13-99-64, where there had been a judicial determination of property lines in a boundary dispute and a party failed to remove its encroachment. Under the facts of this case, it was reasonable for the Connollys to demand a judicial determination of the proper boundary and their attitude in this regard was not clear and convincing evidence of a state of mind characterized by ill will.
 {¶ 18} Accordingly, we conclude that the trial court erred in awarding the Casertas punitive damages and the assignments of error are well-taken.
 {¶ 19} On consideration whereof, the court finds that substantial justice has not been done the parties complaining and that portion of the judgment of the Ottawa County Court of Common Pleas awarding appellees punitive damages is vacated. Appellees are ordered to pay the court costs of this appeal pursuant to App.R. 24.
Judgment vacated in part.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Pietrykowski, J., Lanzinger, J., Singer, J., Concur.