**GEVEDON, Appellant,**

v.

**GEVEDON, Appellee.**

[Cite as *Gevedon v. Gevedon,* 167 Ohio App.3d 1, 2006-Ohio-2668.]

Court of Appeals of Ohio,
Second District, Greene County.

No. 2005–CA–31.

Decided May 26, 2006.

Terry L. Lewis, for appellant.

B. Randall Roach, for appellee.

BROGAN, Presiding Judge.

{¶ 1} Kenneth L. Gevedon appeals from the trial court's decision and entry overruling his objections to a magistrate's decision and adopting the decision as its own.

{¶ 2} The present litigation involves a used-car business known as Fairborn Auto Sales, which was operated by appellant Kenneth Gevedon and appellee Joel Gevedon with assistance from Joel's wife, Sandra Gevedon. In its ruling, the trial court approved the magistrate's dismissal of Kenneth's complaint for an accounting of partnership assets. The trial court also approved the magistrate's rulings in favor of Joel on certain counterclaims and requests for punitive damages and attorney fees.[1]

{¶ 3} Kenneth advances two assignments of error on appeal. First, he claims that the trial court erred in dismissing his complaint for an accounting. Second, he contends that the trial court erred in ruling in favor of Joel on the counter-claims and on Joel's request for punitive damages and attorney fees. Each of these assignments of error includes several issues for our review.

{¶ 4} Before addressing the merits of Kenneth's arguments, we turn first to the facts of the present dispute. After hearing six days of testimony from numerous witnesses, the magistrate set forth the following "factual background," which is supported by the record and which the trial court adopted:

{¶ 5} "Plaintiff [Kenneth Gevedon] is a mailman by trade earning a salary of $45,000. Prior to commencement of his business relationship with Defendants [Joel and Sandra Gevedon], Plaintiff was involved in a number of other auto sales business endeavors. At some time prior to April, 1995, Plaintiff was involved in an operation with Glen Ivey known as 'Car Mart,' located at One South Broad Street, Fairborn, Ohio. The Car Mart venture was an automobile cash sales and self-financing operation. In approximately April 1995, Plaintiff started a similar venture with his brother, Defendant Joel Gevedon, known as Fairborn Auto

---

1. For purposes of convenience and clarity, we will refer to Kenneth and Joel Gevedon by their first names. Although Sandra Gevedon originally was named as a defendant in this action, she subsequently was dismissed as a party and is not part of the present appeal.

Sales. There was no written agreement between the parties and all discussions governing the framework of their business arrangement occurred exclusively between Joel and Kenneth Gevedon. Joel Gevedon testified that Plaintiff promised in his agreement to purchase vehicles to supply the lot, pay all overhead expenses, reimburse any actual expenses incurred by either party after payment of operational expenses and split any remaining proceeds equally. According to Plaintiff, however, he was simply a 'banker' and 'landlord' having no liability for operational expenses or daily operations, and was entitled to reimbursement for all capital outlays. Fairborn Auto Sales initially operated from 25 West Dayton Drive, Fairborn, Ohio until early 1996.

{¶ 6} "By November 1995, the Car Mart business was terminated and a settlement was reached with Mr. Ivey, leaving Plaintiff with a substantial amount of vehicles and the rights to collect on numerous accounts for 'buy here, pay here' accounts. With Car Mart no longer a going concern, Plaintiff wanted to move Fairborn Auto Sales to his property at One South Broad Street. Plaintiff and Joel Gevedon agreed that Joel would assist Plaintiff in collecting the roughly $140,000 in accounts payable to Car Mart. The percentage Joel was to receive for his assistance is a matter of dispute.

{¶ 7} "At the time that Fairborn Auto Sales moved to One South Broad Street, Plaintiff had already established a separate repair venture at the location employing the services of a mechanic named Greg Weinberg. The auto repair business was for use by the car lot and service to the general public. Plaintiff agreed to pay Joel Gevedon fifty percent of his share of the revenues received from the repair venture for assistance that Joel would render. Joel became responsible for 'front office' activities associated with the garage on behalf of Plaintiff, including scheduling repairs, dealing with repair customers, towing cars, providing loan vehicles, and reconciling expenses for parts and supplies. Joel Gevedon, assisted at times by Sandra Gevedon, functioned in the front office capacity continuously from 1995 to sometime in 1998 until the venture ceased when Weinberg accepted new employment. Plaintiff admitted that he originally offered fifty percent of the repair proceeds but testified that he had 'no idea' whether those amounts were ever paid to Joel. Joel Gevedon testified that he never received any of the proceeds. Sandra Gevedon testified that she determined from the only records available that Plaintiff was paid the sum of $39,647.00 for the garage service repairs from the period of March 19, 1996, to March 4, 1998.

{¶ 8} "From nearly the inception of the business, Plaintiff and Joel Gevedon had substantial disagreements over the operation and finances of Fairborn Auto Sales. By April, 1996, Plaintiff and Defendants Joel and Sandra Gevedon were no longer able to civilly discuss reconciliation of the books. Plaintiff engaged a

bookkeeper, Dyann Bolin, in June 1997 through March 1998, to 'protect his interests.' Also in 1997, Plaintiff approached his brother, James Gevedon, about opening 'Jet Auto Sales' approximately 1.4 miles from Fairborn Auto Sales. 'Jet' would operate the same type of business as Fairborn Auto Sales, although Plaintiff testified that the businesses were not in competition. Jet actually opened in March, 1998. According to Defendants and other witnesses, the quality of cars purchased by Plaintiff for inventory at Fairborn Auto Sales deteriorated from the time that Jet opened. Plaintiff testified that he stopped purchasing cars altogether for the Fairborn Auto Sales lot as of October 1999. Defendant Joel Gevedon then began to purchase cars for the Fairborn Auto Sales lot."

{¶ 9} On May 8, 2000, Kenneth filed his complaint for an accounting of partnership assets with regard to Fairborn Auto Sales. On August 14, 2000, Joel and Sandra Gevedon answered and asserted ten counterclaims seeking recovery on various tort and contract law theories. The matter proceeded to trial before the magistrate in May, June, and July 2001. On July 8, 2002, the magistrate filed a decision rejecting Kenneth's request for an accounting of partnership assets. As for the counterclaims, the magistrate ruled in favor of Joel on counterclaims for breach of contract, promissory estoppel, unjust enrichment, and breach of fiduciary duty. The magistrate also found Joel entitled to punitive damages on the counterclaim for breach of fiduciary duty. Finally, the magistrate awarded Joel attorney fees in connection with his defense against Kenneth's action for an accounting. The magistrate found the other counterclaims to be without merit.

{¶ 10} On November 7, 2002, the trial court filed a short decision and entry overruling all objections and adopting the magistrate's decision as its own. We dismissed a prior appeal in this matter for lack of a final, appealable order because the amount of Joel's attorney-fee award remained undetermined. The trial court resolved that issue in a February 18, 2005, decision and entry. This timely appeal followed.

{¶ 11} In his first assignment of error, Kenneth claims that the trial court erred in dismissing his complaint for an accounting. A review of the magistrate's decision reveals that the accounting action was dismissed for three reasons. First, the magistrate held that the business relationship between Kenneth and Joel was not a "partnership" subject to the accounting provisions of the Ohio Revised Code. Second, even if the parties' business relationship was a true partnership, the magistrate concluded that the failure to file a certificate of partnership for Fairborn Auto Sales precluded Kenneth from bringing an action for an accounting. Third, the magistrate determined that even if the business relationship were a partnership, and even if Kenneth could bring an accounting

action, the lack of coherent financial records for Fairborn Auto Sales made it impossible for an accounting to be performed.

{¶ 12} On appeal, Kenneth challenges each of the foregoing grounds for dismissing his complaint for an accounting. First, he insists that his business relationship with Joel qualified as a partnership, which is defined generally as "an association of two or more persons to carry on as co-owners a business for profit * * *." R.C. 1775.05(A). Second, he argues that R.C. 1777.02 and 1777.04 do not prohibit a partner from bringing an action against another partner when no certificate of partnership has been filed. Instead, he argues that the Revised Code merely prohibits a *partnership* from filing suit absent the filing of a certificate of partnership. Kenneth also asserts that the certificate of partnership argument raises a "lack of capacity" issue that was waived when not asserted in Joel's answer. Third, Kenneth contends that even if the partnership records are incomplete, the trial court should have awarded him certain funds and assets that Joel owed him.

{¶ 13} Upon review, we find no error in the trial court's ruling regarding the complaint for an accounting.[2] In reaching this conclusion, we need not address the merits of the first two issues raised by Kenneth. Even assuming, arguendo, that the parties' business relationship qualified as a true partnership and that a certificate of partnership was not needed, we harbor no doubt that the trial court properly denied the request for an accounting for the third reason cited by the magistrate: the lack of coherent business records made it impossible for an accounting to performed.

{¶ 14} Having reviewed the more than 1,400 pages of hearing transcript, we concur with the following assessment by the magistrate:

{¶ 15} "After six days of trial, the one fact that is abundantly clear is that the evidence is insufficient to establish what is owed to whom from the operation of Fairborn Auto Sales. No general ledgers were ever entered into evidence. No partnership bank statements were ever produced. There were no records whatsoever produced by Plaintiff for the period 1995 through mid 1997. Income ledgers were produced by the Plaintiff for the period 1997 forward, but none of the corresponding liabilities were introduced except for the eight month period after the complaint was filed. Plaintiff's bookkeeper for the period June 1997 through March 1998 testified that she had attempted to reconstruct the general ledger and was unable to do so. Plaintiff himself testified that he could not reconcile the books with Defendants from April 1996 to as late as 1998. The

---

2. As noted above, the trial court adopted the magistrate's decision in full as its own. Therefore, for purposes of our analysis herein, we will cite and discuss the magistrate's decision, while treating the magistrate's rulings as those of the trial court itself.

parties kept records of liabilities, payables and expenses in documents referred to as 'outbooks.' No such documents were introduced into evidence for the entire five year period preceding the filing of the Complaint." (Citations omitted.)

{¶ 16} Based on the evidence submitted and testimony provided during the hearing on Kenneth's request for an accounting, it is impossible to determine the revenues, expenses, or profits for Fairborn Auto Sales. As the magistrate observed, many financial records are missing and others are incomplete. Despite our careful review of the hearing transcript, we cannot say that the lower court erred in finding it impossible to determine who owed what to whom regarding the operation of Fairborn Auto Sales. Kenneth bore the burden of introducing sufficient evidence "to enable the court to make a definitive accounting that states the 'true condition of [the] affairs' " of the car dealership. *Dunn v. Zimmerman* (1994), 69 Ohio St.3d 304, 307, 631 N.E.2d 1040. He failed to do so. "In the absence of sufficient proof, the court must leave the parties where they stand." Id. Therefore, the trial court did not err in denying Kenneth's request for an accounting.

{¶ 17} Kenneth asserts under his first assignment of error, however, that Joel indisputably owes him thousands of dollars representing his share of certain profits from the operation of Fairborn Auto Sales. Kenneth also argues that he is entitled to ownership of numerous automobiles that remain in the possession of Joel, as well as a 1987 tow truck and a tire changer.

{¶ 18} With regard to the money allegedly owed to Kenneth, the trial court did not err in failing to award it to him. Absent the ability to review the entire scope of Fairborn Auto Sales' financial transactions, it was impossible for the trial court to determine how much money, if any, actually was owed to Kenneth. At the hearing, the parties accused one another of failing to divide the car lot's profits and expenses fairly. Kenneth accused Joel of failing to pay him his share of certain car sales proceeds. On the other hand, Joel and his wife accused Kenneth of often taking more than his share of the profits and leaving them with a disproportionate share of the expenses. Under such circumstances, the trial court properly declined to award Kenneth damages for the operation of the car-lot business because it was impossible to tell who really owed what to whom. *Dunn*, 69 Ohio St.3d at 308–309, 631 N.E.2d 1040. As noted above, the result in such a case is that the parties must be left where they stand. Id. at 307, 631 N.E.2d 1040.

{¶ 19} As for the automobile inventory cited by Kenneth, the parties previously filed an agreed order and entry resolving their dispute over ownership of the cars. With regard to the 1987 tow truck and the tire changer, these items are in the possession of Joel Gevedon. We note, however, that other property of the

Fairborn Auto Sales business—including a second tow truck, a set of jacks, and a tire "bouncer"—allegedly was removed from the premises by Kenneth. As with the money purportedly owed to Kenneth from the operation of Fairborn Auto Sales, the trial court did not err in failing to award him the 1987 tow truck or the tire changer. Once again, absent an accounting of the car lot's full financial affairs, which cannot be performed, it is impossible to determine who is entitled to the disputed cash and property. Therefore, the trial court correctly left the parties where they stand regarding possession of the assets of Fairborn Auto Sales. Kenneth's first assignment of error is overruled.

{¶ 20} In his second assignment of error, Kenneth contends that the trial court erred in ruling in Joel's favor on certain counterclaims and on a request for punitive damages and attorney fees. The counterclaims on which Joel prevailed were for breach of contract, unjust enrichment, promissory estoppel, and breach of fiduciary duty. Based on its finding that Kenneth had breached a fiduciary duty to Joel, the trial court awarded punitive damages of $5,000. Finally, based on the imposition of punitive damages and what it perceived as an inadequate basis for Kenneth's lawsuit against Joel, the trial court also ordered Kenneth to pay attorney fees. Kenneth contests each of the foregoing rulings.

{¶ 21} We begin our analysis with the counterclaims for breach of contract, unjust enrichment, and promissory estoppel. These causes of action stem from Joel's involvement in two other business ventures operated by Kenneth, separate and apart from the parties' operation of Fairborn Auto Sales: a used-car lot known as "Car Mart" that had existed prior to Fairborn Auto Sales and an auto-repair business. The trial court found that Kenneth had entered into a separate agreement to pay Joel 25 percent of anything he collected on delinquent Car Mart accounts. The trial court also found that Joel had performed under the agreement but had not been paid his 25 percent, which amounted to $28,795. With regard to the auto-repair business, the trial court found that Kenneth had entered into a separate agreement to pay Joel 50 percent of what Kenneth himself received from the auto-repair business for performing administrative work. The trial court then found that Joel had performed the work but had not been paid his share, which totaled $19,823. As a result, the trial court found Joel entitled to the foregoing amounts on alternative theories of breach of contract, unjust enrichment, and promissory estoppel.[3]

---

**3.** Technically, the magistrate and the trial court should not have found in favor of Joel on both quasi-contract and contract theories. Quasi-contract claims such as unjust enrichment and promissory estoppel apply in the absence of a contract, which was found to exist here. Nevertheless, Kenneth has not raised this particular issue on appeal and there is no prejudice to him given that the trial court awarded Joel the money only once.

{¶ 22} Kenneth's argument on appeal is that the trial court should have awarded Joel a share of the profit after deductions for certain expenses incurred in connection with the Car Mart account collections and the auto-repair business. We disagree. With regard to the Car Mart accounts, there is no evidence that there were any expenses. Even more importantly, in his objections to the magistrate's ruling, Kenneth's only argument as to the Car Mart accounts was that he had agreed to give Joel five percent of the collected accounts, not 25 percent. Joel testified, however, that the agreement called for him to receive 25 percent of anything collected on the delinquent Car Mart accounts. As the trier of fact, the magistrate credited this testimony, and the trial court adopted the magistrate's ruling. Therefore, we find no error in the lower court's decision to award Joel $28,794, which represented 25 percent of the Car Mart account collections.

{¶ 23} With regard to the auto-repair venture, Kenneth objected to the magistrate's decision to award Joel $19,823, which was one-half of his share of the revenues. Kenneth argued that this amount should have been reduced by the $5,000 cost of an "AC recycle machine" and certain "initial supplies." The trial court overruled the objection without explanation and adopted the magistrate's decision. Upon review, we find that the record contains testimony supporting the award of $19,823 to Joel without the reductions requested by Kenneth. At trial, Kenneth testified that he had agreed to give Joel 50 percent of whatever the mechanic, Greg Weinberg, gave him.[4] Likewise, Joel testified that he was promised 50 percent of "whatever Kenny collected." In addition, Sandra Gevedon, who also assisted with the auto-repair venture, testified that the agreement called for Joel to receive "half of Ken's half." Sandra also testified that Kenneth and Greg Weinberg split a total of $69,789 from the auto-repair business, which resulted in $39,647.77 going to Kenneth. After rounding off this amount, the magistrate held that Joel was entitled to half of it pursuant to his agreement with Kenneth. As a result, the magistrate awarded Joel $19,823, and the trial court adopted the magistrate's decision. Because the award is supported by the evidence, we find no merit in Kenneth's argument.

{¶ 24} We turn next to the counterclaim for breach of fiduciary duty, the award of punitive damages, and the award of attorney fees. Despite finding that Fairborn Auto Sales was not a true partnership, the trial court concluded that a "de facto fiduciary relationship" existed between Kenneth and Joel. The trial court further found that Kenneth had breached the fiduciary relationship. In

4. The record reflects that Kenneth and Weinberg first split the auto-repair proceeds 50–50. Kenneth then agreed to give Joel 50 percent of his share, or 25 percent of the total, for overseeing the repair business and performing administrative work.

reaching this conclusion, the trial court determined, among other things, that Kenneth had opened a competing car lot less than two miles from Fairborn Auto Sales, had permitted a prospective new partner to review Fairborn Auto Sales' proprietary business records, had steered Fairborn Auto Sales' customers to his new competing car lot, and had urged at least one customer of Fairborn Auto Sales to default on her car loan.

{¶ 25} After finding a breach of fiduciary duty, however, the trial court held that Joel had failed to prove any actual damages attributable to the breach. Therefore, the trial court found in Joel's favor on the breach-of-fiduciary-duty counterclaim but awarded him only nominal damages of $100. The trial court then used the breach of fiduciary duty to impose a punitive damages award of $5,000. Finally, the trial court awarded Joel attorney fees.

{¶ 26} On appeal, Kenneth does not challenge the finding that a "de facto fiduciary relationship" existed. Instead, he argues that his actions with regard to the competing car lot did not constitute a breach of fiduciary duty. Kenneth also asserts that the trial court erred in awarding punitive damages and attorney fees in the absence of an accounting or any actual damages.

{¶ 27} Upon review, we do not agree that the trial court erred in finding a breach of fiduciary duty. Assuming that such a duty existed (an issue we have no occasion to address given Kenneth's failure to dispute it), the evidence supports a conclusion that Kenneth breached the duty. In essence, the trial court found that Kenneth had undertaken a course of conduct designed to put Joel, his putative partner, out of business. The apparent goal was to eliminate Joel from the picture, thereby enabling Kenneth to sell cars to former Fairborn Auto Sales customers himself and keep all of the profit. Such conduct reasonably may be found to violate the duty to exercise good faith and act with integrity in a fiduciary capacity.

{¶ 28} We also reject Kenneth's argument that an accounting was necessary on Joel's breach-of-fiduciary-duty claim. In support, Kenneth cites *Dunn v. Zimmerman* (1994), 69 Ohio St.3d 304, 631 N.E.2d 1040. We find *Dunn* inapplicable for at least two reasons. First, it addresses the need for an accounting of partnership affairs. Although the trial court found a de facto fiduciary relationship, it held that Kenneth and Joel did not have a true partnership. Second, even if a true partnership did exist, the trial court found that resolution of Joel's fiduciary-duty claim did not require "a searching inquiry" into the full affairs of the Fairborn Auto Sales business, obviating the need for an accounting. See *Dunn,* supra, 69 Ohio St.3d at 309, 631 N.E.2d 1040.

{¶ 29} For the foregoing reasons, we conclude that the trial court did not err in finding a breach of fiduciary duty or in awarding Joel nominal damages of

$100. The crux of Kenneth's argument, however, is that the trial court erred in awarding Joel punitive damages of $5,000 and attorney fees without proof of any actual damages. On the issue of punitive damages, we agree that the trial court erred. We previously have recognized that "actual compensatory damages rather than nominal damages are necessary to support an award of punitive damages." *Long v. Sun Ray Stove Co.* (Sept. 2, 1986), Miami App. No. 85–CA–44, 1986 WL 9675; *Williams v. McCrory Corp.* (Jan. 11, 1985), Montgomery App. No. 8963, 1985 WL 6680 (reasoning that "since appellant was awarded only nominal damages, she is not entitled to punitive damages"); see, also, *Seasons Coal Co., Inc. v. Cleveland* (1984), 10 Ohio St.3d 77, 82, 10 OBR 408, 461 N.E.2d 1273 (observing that "punitive damages are highly irregular absent proof of any actual damages"); *Richard v. Hunter* (1949), 151 Ohio St. 185, 85 N.E.2d 109, paragraph one of the syllabus ("Exemplary or punitive damages may not be awarded in the absence of proof of actual damages"); *Caserta v. Connolly*, Ottawa App. No. OT–03–004, 2004-Ohio-6001, 2004 WL 2569437, at ¶ 14 ("Nominal damages, however, are not the actual damages that are a prerequisite to an award of punitive damages"). The applicable version of R.C. 2315.21 also provides that punitive damages are not recoverable in a tort action unless the plaintiff has adduced proof of actual damages that resulted from the tortious conduct. Therefore, we conclude that the trial court erred in using Kenneth's breach of fiduciary duty, and the resulting award of nominal damages, to support a punitive-damages award.

{¶ 30} The only remaining issue is the award of attorney fees. On this issue, the trial court adopted the following reasoning from the magistrate:

{¶ 31} "When punitive damages are awarded, the Court may award attorney fees employed in the prosecution of an action. 1 OJI 23.71. Plaintiff had insufficient basis to bring this action based on the decision in *Dunn*, supra, and R.C. 1777.01, et seq. Based upon the reasoning employed to award punitive damages, the Court finds that Defendant is entitled to an award of attorney fees for the defense of this case only. Defendant would have had to commence a separate action to recoup his claimed losses of Car Mart and garage repair revenues that were independent of the partnership agreement."

{¶ 32} Upon review, we reject Kenneth's argument that the attorney-fee award cannot stand. We recognize, however, that the foregoing reasoning is problematic in two respects. First, the trial court determined that an award of attorney fees was appropriate, in part, because of the punitive damages awarded in connection with Joel's breach-of-fiduciary-duty claim. In our analysis above, however, we found no basis for the punitive-damages award. Therefore, the imposition of punitive damages cannot justify the award of attorney fees. Second, even if punitive damages were appropriate, they could not support the

attorney-fee award here. The trial court noted that when punitive damages are awarded, a court may grant the prevailing party attorney fees incurred in *prosecuting* the action. But the trial court expressly declined to award Joel any attorney fees for the prosecution of his various counterclaims. Instead, the trial court found him entitled to attorney fees incurred solely in connection with his *defense* of Kenneth's lawsuit against him. Thus, any punitive damages granted on Joel's counterclaim logically could not support an award of attorney fees for defending against Kenneth's main action.

{¶ 33} Despite the foregoing problems, we note that the trial court cited another basis for awarding attorney fees, apart from Joel's fiduciary-duty claim and the existence of punitive damages. In particular, the trial court found that Kenneth "had insufficient basis to bring this action based upon the decision in *Dunn,* supra, and R.C. § 1777.01 et seq." This appears to constitute a finding that Kenneth acted in bad faith, vexatiously, wantonly, obdurately, or for oppressive reasons in filing his complaint for an accounting of partnership assets. An award of attorney fees for such reasons is within a trial court's inherent power and is reviewed for an abuse of discretion. *Whitt v. Whitt,* Greene App. No. 2003–CA–82, 2004-Ohio-5285, 2004 WL 2245086, at ¶ 22.

{¶ 34} In his objections to the magistrate's decision, Kenneth failed to address the finding that attorney fees were warranted because he lacked a sufficient basis to bring his accounting action. Instead, he argued only that "[w]ith punitive damages being improper, any award of attorney fees is also improper." This conclusory argument overlooks the magistrate's additional finding that Kenneth "had insufficient basis to bring this action" and that attorney fees were warranted for Joel's *defense* against Kenneth's lawsuit. Absent any argument from Kenneth on this issue in the trial court, we conclude that he has waived his ability to address it on appeal. In any event, given Kenneth's failure to present coherent business records from which an accounting could be performed, we would be disinclined to find an abuse of discretion in the determination that his lawsuit lacked a sufficient basis. Kenneth's second assignment of error is sustained in part and overruled in part.

{¶ 35} Based on the reasoning set forth above, we hereby affirm in part and reverse in part the judgment of the Greene County Common Pleas Court. The trial court's judgment is reversed insofar as it awarded appellee Joel Gevedon punitive damages of $5,000. In all other respects, the trial court's judgment is hereby affirmed.

*Judgment affirmed in part*
*and reversed in part.*

WOLFF and GRADY, JJ., concur.