[Cite as *Watershed Mgt., L.L.C. v. Neff*, 2012-Ohio-1020.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PICKAWAY COUNTY

| | | |
|---|---|---|
| WATERSHED MANAGEMENT, LLC, | : | |
| | : | |
| Plaintiff-Appellee, | : | Case No. 10CA42 |
| | : | |
| vs. | : | **Released: March 8, 2012** |
| | : | |
| JOHN NEFF, | : | <u>DECISION AND JUDGMENT</u> |
| | : | <u>ENTRY</u> |
| Defendant-Appellant. | : | |

<u>APPEARANCES</u>:

Richard T. Ricketts, Ricketts Co., LPA, Pickerington, Ohio, for Appellant.

Michael N. Beekhuizen, Carpenter Lipps & Leland, LLP, Columbus, Ohio, for Appellee.

McFarland, J.:

{¶1} Appellant John Neff appeals the trial court's decision granting summary judgment to Appellee Watershed Management, LLC, the trial court's denial of a motion to intervene, and the imposition of attorney fees and costs. Neff argues 1) the trial court erred by granting summary judgment when genuine issues of material fact remained; 2) the trial court erred in not finding that res judicata applied to certain issues; 3) the trial court erred in denying a third party's motion to intervene; 4) the trial court erred in finding Appellant acted in bad faith and awarding attorney fees for such; 5) the trial court erred in awarding attorney fees

without requiring evidence they were reasonable and necessary; 6) the trial court erred in calculating costs, which included deposition and transcript costs; and 7) the trial court erred in granting a motion for a final judgment without giving the adverse party an opportunity to respond.

{¶2} Having reviewed the record, we find that the trial court erred in granting summary judgment on Appellee's breach of contract claim, and in issuing its final judgment entry without affording Appellant an opportunity to be heard on the matter. Accordingly, we reverse the judgment of the trial court in part, and remand the case for further proceedings.

FACTS

{¶3} In 2005, Pickaway County completed the construction of a ditch near Caldwell Road. The purpose of the ditch was to divert water from the roadbed and prevent its softening. According to Douglas Kohli ("Kohli"), a district technician for the Pickaway County Soil & Water Conservation District ("SWCD"), the Caldwell Road project did not break watershed, or change the ultimate destination of the water. The ditch merely diverted water from the roadbed and directed it to its natural outlet, albeit via a faster route.

{¶4} However, Appellant John Neff ("Neff") believed otherwise. Neff maintained that the ditch diverted water onto his land, creating drainage and erosion problems. Neff voiced his concern and displeasure to the Pickaway

County commissioners. In response, the commissioners consulted Kohli for a possible solution. Kohli suggested that Neff and surrounding landowners install grass waterways, which were grass-covered parabolic channels. Kohli explained the Natural Resources Conservation Service ("NRCS") and the Farm Service Agency ("FSA") administered programs that could reimburse landowners for up to 90% of the cost of constructing these waterways. The landowners would have to agree to maintain the waterways for a certain number of years, and the government, in addition to reimbursing most of the construction costs, would pay rental fees to the landowners as compensation for the tillable acreage the waterways replaced.

{¶5} Subsequently, Mark Ruff ("Ruff"), who farmed Neff's land; Carl Hamman ("Hamman"), who was the owner and sole member of Appellee Watershed Management, LLC ("Watershed"); and Neff met. Ruff had organized the meeting to suggest Neff select Watershed as the contractor to construct the waterways. Ruff had worked with Watershed in the past and was familiar with the process, so he again outlined the process for constructing the waterways, obtaining reimbursement, and paying the contractor. Kohli would design the waterways and Watershed would construct them. Watershed would only charge Neff the amount that the government would reimburse him – 90% of the estimated cost – plus additional fees for any extra materials or work that was required.

{¶6} Neff agreed to this arrangement, though he did not sign a written contract. Neff selected to upgrade the clay drainage tile for a portion of the project, which meant that he would owe Watershed $1,900 above the amount the government would reimburse him for the waterways.

{¶7} With all of the landowners agreeing to the waterways project, Kohli actually designed the waterways and Watershed began construction. During construction, Kohli noticed that a span of nearly 400 feet of the waterway could potentially break watershed. Breaking watershed would result in changes in peak water flow downstream, as well as increased erosion, which could subject the entities involved to litigation. Additionally, Kohli knew that the Pickaway County Engineer's policy was not to break watershed, so Kohli amended the plans to avoid breaking watershed. Kohli asked Watershed not to complete the remaining 400 feet as a waterway, but to have the waterway stop short of its originally intended termination point and blend it into the landscape instead.

{¶8} When the waterways were completed, Kohli examined them and certified they were constructed as designed and were working properly. Kohli forwarded his plans and certification to the NRCS, which agreed with his assessments and approved and forwarded the plans to the appropriate authorities.

{¶9} Prior to completion, Ruff sent a letter to each landowner, stating that they needed to meet with the SWCD to complete additional paperwork and if there

was a perceived problem with the waterway, they needed to address it immediately. Ruff then sent out letters to the landowners, including Neff, explaining that Watershed would be sending them bills for the work completed. Ruff explained that the bill was only to be used for submission to the FSA, but there would also be a second bill with a negotiated balance, the amount the landowner would have to pay. Neff never complained about the waterways to anyone involved, nor did he dispute the bill when Watershed presented it to him.

{¶10} To finalize the project and have the government reimburse him, Neff completed the final paperwork, wherein he certified that the waterways had been constructed as designed and requested reimbursement for his costs. The government ultimately approved Neff's request for reimbursement.

{¶11} Contrary to Kohli's certification that the waterways were working correctly, Neff believed that they were not. Despite Kohli's concern for breaking watershed, Neff believed that the waterways should have extended the additional 400 feet. Neff also stated that there was a lip, or ridge, along the edge of part of the waterways that prevented portions of his fields from draining. Having these complaints, Neff initially did not accept the government reimbursement checks, but finally acquiesced.

{¶12} Meanwhile, Watershed was at a loss as to why Neff had not paid his bill, since Kohli and the NCRS had certified that the waterways were working

properly, Neff had certified that they were built correctly, and the government had approved Neff's reimbursement. Watershed also understood, as did Kohli, that the waterways were designed to address erosion, not drainage, so Neff's complaints were irrelevant. Thus, Watershed instituted litigation.

{¶13} During the dispute, Neff sold his land to STEW Farm, Ltd. ("STEW"). STEW moved to intervene, arguing it had claims against Watershed, as the new owner of the allegedly defective waterways. The trial court denied STEW's motion to intervene, finding that the dispute between Neff and Watershed concerned the contract to construct the waterways and STEW was unrelated to that transaction and had not demonstrated that it was entitled to intervene.

{¶14} Watershed then moved for summary judgment on its breach of contract and unjust enrichment claims. Watershed also sought dismissal of Neff's counterclaims for breach of contract and breach of warranty because Neff had presented no evidence that he had suffered damages. Finally, Watershed asked that the trial court find Neff had withheld payment in bad faith, entitling Watershed to recover its attorney fees.

{¶15} Neff countered that many factual issues remained unresolved, but also moved for summary judgment against Watershed on its requests for attorney fees and pre-judgment interest.

{¶16} The trial court granted Watershed's motion for summary judgment. Watershed then moved the court to issue a final judgment entry, which could include compensatory damages for breach of contract, attorney fees, pre-judgment interest, post-judgment interest, and costs.  Before Neff's time to respond had expired, the trial court granted Watershed's motion.  Neff now appeals the trial court's rulings pertaining to summary judgment, the finding of bad faith, the imposition of attorney fees, and the denial of STEW's motion to intervene, and the calculation of costs.

## ASSIGNMENTS OF ERROR

I.      "THE TRIAL COURT ERRED IN GRANTING THE APPELLEE'S MOTION FOR SUMMARY JUDGMENT WHEN THERE WERE NUMEROUS MATERIAL ISSUE OF FACT REMAINING TO BE RESOLVED.

II.     "THE TRIAL COURT ERRED IN NOT DETERMINING THAT ITS PRIOR FINAL JUDGMENT ENTRY IN THE RELATED MATTER OF NEFF V. RUFF (CASE NO. 2007 CI 598) WAS DISPOSITIVE AS TO A PORTION OF THE ISSUES PENDING HEREIN, INCLUDING BUT NOT LIMITED TO UNDER EITHER THE THEORIES OF RES JUDICATA, CLAIMS PRECLUSION AND/OR COLLATERAL ESTOPPEL.

III.    "THE TRIAL COURT ERRED IN DENYING THE MOTION TO INTERVENE OF STEW FARM, LTD.

IV.     "ATTORNEY'S FEES MAY NOT BE RECOVERED IN DAMAGES FOR BREACH OF CONTRACT IN OHIO ABSENT A STATUTORY OR CONTRACTUAL PROVISION IN A COMMERCIAL CONTRACT OR A FACTUAL DETERMINATION OF BAD FAITH.

V.      "THE TRIAL COURT ERRED IN AWARDING [WATERSHED] ITS REQUESTED ATTORNEY'S FEES WITHOUT REQUIRING

[WATERSHED] TO PRESENT EVIDENCE THAT THOSE REQUESTED ATTORNEY'S FEES WERE REASONABLE AND NECESSARY, AS REQUIRED BY OHIO LAW.

VI.     "THE TRIAL COURT ERRED IN TAXING DEPOSITION EXPENSES, INCLUDING COURT REPORTER BILLS, AS COSTS WHEN THOSE TRANSCRIPTS WERE NOT USED AT TRIAL.

VII.    "THE TRIAL COURT ERRED IN GRANTING [WATERSHED'S] MOTION FOR FINAL JUDGMENT WITHOUT ALLOWING [NEFF] AN OPPORTUNITY TO RESPOND AND DISPUTE THE CLAIMS."[1]

ANALYSIS

1. Final Appealable Order

{¶17} "Ohio courts of appeals possess jurisdiction to review the final orders of inferior courts within their district." *Portco, Inc. v. Eye Specialists, Inc.*, 173 Ohio App.3d 108, 2007-Ohio-4403, 877 N.E.2d 709, at ¶8, citing Section 3(B)(2), Article IV, Ohio Constitution and R.C. 2501.02. "A final, appealable order is one that, inter alia, affects a 'substantial right' and determines the action." Id., citing R.C. 2505.02(B)(1).

{¶18} "An order which adjudicates one or more but fewer than all the claims * * * must meet the requirements of R.C. 2505.02 *and* Civ.R. 54(B) in order to be final and appealable." (Emphasis added.) *Noble v. Colwell* (1989), 44 Ohio St.3d 92, 96, 540 N.E.2d 1381. Under Civ.R. 54(B), any "form of decision, however designated, which adjudicates fewer than all the claims * * * shall not terminate

---

[1] For convenience, we address Neff's assignments of error out of order.

the action as to any of the claims or parties[.]"  The rule further provides "an order

of the trial court is 'subject to revision at any time before the entry of judgment

adjudicating all the claims and rights and liabilities of all the parties.'  This is true

even if an order satisfies the finality requirements of R.C. 2505.02." *Noble* at 97,

fn. 6.

{¶19} Despite the plain language of Civ.R. 54(B), the Supreme Court had

held "a judgment in an action which determines a claim in that action and has the

effect of rendering moot all other claims in the action as to all other parties to the

action is a final appealable order pursuant to R.C. 2505.02, and Civ.R. 54(B) is not

applicable to such a judgment."  *Wise v. Gursky* (1981), 66 Ohio St.2d 241, 243,

421 N.E.2d 150.  See, also, *Gen. Acc. Ins. Co. v. Ins. Co. of N. Am.* (1989), 44

Ohio St.3d 17, 21, 540 N.E.2d 266, citing *Wise* and *Harleysville Mut. Ins. Co. v.

Santora* (1982), 3 Ohio App.3d 257, 444 N.E.2d 1076; *Mtge. Electronic

Registration Sys. v. Mullins*, 161 Ohio App.3d 12, 2005-Ohio-2303, 829 N.E.2d

326, at ¶18.  Essentially, when a judgment on fewer than all claims renders the

remaining claims moot, it becomes a judgment on all the claims and Civ.R. 54(B)

no longer applies.

{¶20} In this case, Watershed moved for summary judgment on its claims

for breach of contract and unjust enrichment, as well as on Neff's counterclaims

for breach of contract and breach of warranty.  The trial court granted Watershed's

motion for summary judgment, and dismissed Neff's counterclaims. Though the trial court's entry was silent as to Watershed's claim for unjust enrichment, this is not problematic, because breach of contract and unjust enrichment are mutually exclusive. See *Loop v. Hall*, 4th Dist. No. 05CA3041, 2006-Ohio-4363, at ¶23 ("a party may not recover for unjust enrichment when an express contract is involved"), citing *Shannon v. Lutz* (Dec. 11, 1998), 2d Dist. No. 98CA21 and Calamari & Perillo, Contracts (2 Ed. 1977) 19-20, Sections 1-12. When the trial court found that a contract existed between Watershed and Neff, Watershed's claim for unjust enrichment became moot. Once the trial court entered its final entry determining damages and costs, there was a final, appealable order giving us jurisdiction to consider the merits of Neff's appeal.

## 2. Summary Judgment

{¶21} In his first assignment of error, Neff argues that the trial court erred in granting summary judgment because genuine issues of material fact remained that precluded summary judgment. We agree, in part and sustain Neff's first assignment of error in part.

{¶22} "Appellate courts review summary judgments de novo." *Wells Fargo v. Phillabaum*, 192 Ohio App.3d 712, 2011-Ohio-1311, 950 N.E.2d 245, at ¶7, citing *Broadnax v. Greene Credit Service* (1997), 118 Ohio App.3d 881, 887, 694 N.E.2d 167 and *Coventry Twp. v. Ecker* (1995), 101 Ohio App.3d 38, 41, 654

N.E.2d 1327. "In other words, we afford no deference whatsoever to a trial court's decision, and, instead, conduct our own independent review to determine if summary judgment is appropriate." *Wells Fargo* at ¶7, citing *Woods v. Dutta* (1997), 119 Ohio App.3d 228, 233-234, 695 N.E.2d 18 and *Phillips v. Rayburn* (1996), 113 Ohio App.3d 374, 377, 680 N.E.2d 1279.

{¶23} "Summary judgment is appropriate only when (1) there is no genuine issue of material fact, (2) reasonable minds can come to but one conclusion when viewing the evidence in favor of the nonmoving party, and that conclusion is adverse to the nonmoving party, and (3) the moving party is entitled to judgment as a matter of law." *Greene v. Seal Twp. Bd. of Trustees*, 194 Ohio App.3d 45, 2011-Ohio-1392, 954 N.E.2d 1216, at ¶9, citing *Doe v. Shaffer,* 90 Ohio St.3d 388, 390, 2000-Ohio-186, 738 N.E.2d 1243, *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 146, 524 N.E.2d 881, and Civ.R. 56(C).

{¶24} "The party moving for summary judgment has the initial burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law." *Greene* at ¶10, citing *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292, 662 N.E.2d 264. "The moving party must inform the trial court of the basis of the motion and must identify those portions of the record that demonstrate the absence of a material fact." Id., citing *Dresher* at 293. When seeking to have the nonmoving party's claims dismissed, "the moving party must

specifically refer to the 'pleadings, depositions, answers to interrogatories, * * * written stipulations of fact, if any,' that affirmatively demonstrate that the nonmoving party has no evidence to support [its] claims." Id., citing *Dresher* and Civ.R. 56(C). "If the moving party satisfies its initial burden, the nonmoving party then has the reciprocal burden outlined in Civ. R. 56(E) to set forth specific facts showing that there is a genuine issue for trial. If the nonmovant does not satisfy this evidentiary burden and the movant is entitled to judgment as a matter of law, the court should enter a summary judgment accordingly." Id., citing *Kulch v. Structural Fibers, Inc.* (1997), 78 Ohio St.3d 134, 145, 677 N.E.2d 308, citing *Dresher* at 295. "Mere speculation and unsupported conclusory assertions are not sufficient." *Hansen v. Wal-Mart Stores, Inc.*, 4th Dist. No. 07CA2990, 2008-Ohio-2477at ¶8, citing *Boulton v. Vadakin,* 4th Dist. No. 07CA26, 2008-Ohio-666, at ¶20.

{¶25} Here, Neff argues that the trial court erred in granting Watershed summary judgment on its claim for breach of contract. We agree.

## A. The Contract

{¶26} "'Essential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration.'" *Kostelnik v. Helper,* 96 Ohio St.3d 1, 2002-Ohio-2985, 770

N.E.2d 58, at ¶16, quoting *Perlmuter Printing Co. v. Strome, Inc.* (N.D.Ohio 1976), 436 F.Supp. 409, 414. "Terms of an oral contract may be determined from 'words, deeds, acts, and silence of the parties.'" *Kostelnik* at ¶15, quoting *Rutledge v. Hoffman* (1947), 81 Ohio App. 85, 75 N.E.2d 608, paragraph one of the syllabus, and citing *Ford v. Tandy Transp., Inc.* (1993), 86 Ohio App.3d 364, 380, 620 N.E.2d 996. Here, an oral contract existed between Watershed and Neff, whereby Watershed was to construct the waterways pursuant to Kohli's drawings.

{¶27} The idea of installing the grass waterways was originally suggested by the Pickaway County commissioners. (Neff's Depo. at 25.) Kohli explained the process of installing the waterways and the federal assistance available to Neff and other adjoining landowners. (Ruff's Depo. at 25.) Kohli would design the waterways and the landowners would choose a contractor to construct them. Kohli would then inspect the waterways to insure that they were built to his specifications, and if they were, certify the as-built specifications. Kohli would then forward the as-built specifications to the NRCS. The NRCS would independently review the as-built specifications to insure they complied with the program's requirements and certify them at the federal level. The landowner would then certify the waterways were completed according to the specifications to be eligible for reimbursement.

{¶28} Ruff organized the meeting between Watershed and Neff to discuss Watershed being the contractor to construct the waterways. (Hamman's Depo. at 99-100, 52.) Hamman's typical business practice was to only have an oral agreement with his customers. (Hamman's Depo. at 52.) During the meeting with Neff and Ruff, and in further correspondence, Hamman explained that Watershed would install the waterways in exchange for Neff paying an amount equal to what the FSA would reimburse him for installing the waterways – 90% of the estimated costs – plus additional charges for upgrading tile and other miscellaneous work, such as clearing fences. (Hamman's Depo. at 50-51.)

{¶29} Although Neff maintains he had no contract, he does not dispute the foregoing facts. To the contrary, Neff acknowledged he had an agreement to pay Watershed to install the waterways. "I agreed to pay 1,900-and-some-odd dollars, less than $2,000. The job was completed. * * * It didn't cost none of us a dime, only the 1,900-and-some-odd dollars." (Neff's Depo. at 30.) The $1,900 beyond the reimbursed amount was due to Neff upgrading from four-inch to six-inch tile for a portion of the waterways. (Neff's Depo. at 33-34.)

{¶30} The thrust of Neff's argument is he never had a written contract with Watershed, which is true. But he did have an oral contract for Watershed to construct the waterways. Watershed offered to construct the waterways for an amount equal to what the FSA would reimburse Neff for the project, plus an

additional amount of $1,900 for upgraded tiles. Neff accepted the offer and agreed

to pay these amounts. The parties understood this to be the agreement and they

assented to its terms. Watershed was to receive the money as consideration for

constructing the waterways.[2] Neff pointed to no evidence to call these facts into

question.

## B. The Struckman and Fox Affidavits

{¶31} Preliminarily, we must address an evidentiary issue that was raised at

the trial court and again on appeal by Watershed. "[W]hen a trial court concludes

a case without ruling on a motion, appellate courts will generally presume the

motion has been overruled." *In re Lewis* (Apr. 30, 1997), 4th Dist. Nos.

96CA1760, 96CA1763, citing *State v. Rozell* (June 20, 1996), 4th Dist. No.

95CA17 and *State v. Kennedy* (Oct. 2, 1995), 4th Dist. No. 95CA1657.

{¶32} In its reply memorandum in support of summary judgment, Watershed

moved to strike the affidavits of Michael Struckman ("Struckman") and David Fox

("Fox"), which Neff had attached to his memorandum contra. The trial court

acknowledged Watershed's motion, noting that Neff filed the Fox affidavit well

after the discovery cutoff date, but declined to rule on the admissibility of the Fox

affidavit or the Struckman affidavit. The trial court stated, "Assuming without

deciding that these statements are admissible in evidence, they are irrelevant to the

---

[2] Neither contractual capacity nor the legality of the objective or consideration is an issue in this case.

dispositive question whether Neff is in breach of his contract with Watershed."

(Trial Court's Decision and Entry of Oct. 21, 2010, at 13.)  Because the trial court

never ruled on Watershed's motion to strike, we presume it overruled the motion.

Thus, we review the evidence before the trial court with this presumption in mind.

### C. Breach of Contract

{¶33} "A breach of contract occurs when a party demonstrates the existence

of a binding contract or agreement; the non-breaching party performed its

contractual obligations; the other party failed to fulfill its contractual obligations

without legal excuse; and the non-breaching party suffered damages as a result of

the breach."  *Osborne v. Ahern*, 4th Dist. No. 05CA9, 2005-Ohio-6517, at ¶21,

citing *Conley v. Willis* (June 14, 2001), 4th Dist. No. 00CA2746, citing *Garofalo v.*

*Chicago Title Ins. Co.* (1995), 104 Ohio App.3d 95, 108, 661 N.E.2d 218.  "The

general measure of damages for a breach of contract is the amount necessary to

place the non-breaching party in the position he or she would have been had the

breaching party fully performed under the contract."  *Osbourne* at ¶21, citing *F.*

*Enters., Inc. v. Kentucky Fried Chicken Corp.* (1976), 47 Ohio St.2d 154, 351

N.E.2d 121.

{¶34} Interrelated with Watershed's breach of contract claim is Neff's

defense that Watershed did not properly construct the waterways.  "It is well

settled that the law imposes a duty on builders to construct [improvements] in a

'workmanlike manner.'" (Citations omitted.) *Simms v. Heskett* (Sept. 18, 2000), 4th Dist. No. 00CA20. Originally, an action to recover from a builder or contractor who did not perform in a workmanlike manner was a separate cause of action for negligence or breach of the warranty of good workmanship. See *Velotta v. Leo Petronzio Landscaping, Inc.* (1982), 69 Ohio St.2d 376, 378-379, 433 N.E.2d 147 ("The obligation to perform in a workmanlike manner using ordinary care may arise from or out of a contract, i.e., from the purchase agreement, but the cause of action is not based on contract; rather it is based on a duty imposed by law."). Yet the Supreme Court of Ohio refined this standard, because *Velotta* only addressed defects with an already-constructed residence; it did not address a contract for the future construction of an improvement. When there is a contract to construct an improvement in the future, a "claim for breach of an implied duty to construct the improvement in a workmanlike manner arises *ex contractu*." *Kishmarton v. William Bailey Constr., Inc.*, 93 Ohio St.3d 226, 229, 2001-Ohio-1334, 754 N.E.2d 785. That is, when a contractor enters a contract to provide future services, there exists an implied condition that the contractor will perform in a workmanlike manner, and any claim that the contractor failed to perform this obligation arises from the contract, and is not a separate tort. See *Vistein v. Keeney* (1990), 71 Ohio App.3d 92, 105, 593 N.E.2d 52.

{¶35} As noted above, Watershed has proven the existence of a binding oral contract between it and Neff for the construction of the waterways. However, there exists a genuine issue of material fact of whether Watershed performed its obligations under the contract, which precludes summary judgment.

{¶36} Watershed's position is that its only obligation was to construct the waterways according to Kohli's specifications. Watershed points to Kohli's certification that the waterways were built as-designed, and the NRCS' additional certification that the as-built specifications met the applicable requirements and were properly constructed, to demonstrate that it performed its obligations under the contract. Watershed buttressed its argument with Neff's statements that he made on the forms he submitted to the FSA, wherein Neff certified that the waterways had been installed per the specifications. Watershed also alleged that Neff had no evidence contradicting these assertions that the waterways were properly designed and properly constructed.

{¶37} However, as already discussed, the trial court declined to rule upon Watershed's motion to strike Fox affidavit. Thus, there is evidence in the record from a purported expert (Fox) who had personally inspected the waterways and concluded that they "were not properly constructed nor were they up to the standards by which grass waterways should be constructed." (Emphasis in original.) (Neff's Memo. Contra Summ. J., Ex. C, at ¶8-9.) Fox's assertions were

based upon his experience and personal observation of the waterways, and were not merely speculation or unsupported conclusory statements.

{¶38} Additionally, Neff contested the authenticity of his signature on many of the forms purporting to be his certification to the government that the waterways were constructed as designed. (Neff's Depo. at 40-41.) To rebut this allegation, Watershed attached a document to its motion for summary judgment, purporting to be a letter from a forensic document examiner to Neff. (Watershed's Mot. for Summ. J., Ex. 16.) Yet the letter does not fall within any category of acceptable evidence under Civ.R. 56(C), it was not incorporated through an affidavit, and we cannot consider it in our analysis.

{¶39} Thus, there is evidence the waterways were constructed properly, and evidence they were not. Whether Watershed properly constructed the waterways is material and determinative of whether Watershed performed its obligations under the contract, an element of its claim for breach of contract. Thus, there exists a genuine issue of material fact that precludes summary judgment on Watershed's claim for breach of contract and we sustain Neff's first assignment of error as it relates to this issue.

## D. Unjust Enrichment

**{¶40}** As already noted, after finding of an express oral contract existed between Watershed and Neff, Watershed could not recover for unjust enrichment. Thus, Watershed's claim for unjust enrichment should be dismissed as moot.

## E. Neff's Counterclaims

**{¶41}** Within its motion for summary judgment, Watershed argued Neff had presented no evidence of damages and Watershed was entitled to judgment on the counterclaims. We agree.

**{¶42}** Neff vacillated amongst several different answers when stating what his damages were concerning his counterclaims. Initially, when responding to Watershed's interrogatories, Neff stated, "Plaintiff states the amounts cannot currently be calculated as they will require further work on the Farm that cannot be accomplished until subsequent to the 2009 harvest by the current owner of the FARM."

**{¶43}** During the subsequent deposition, Watershed asked Neff what he believed was wrong with the waterways, and Neff responded, "I think it was a political cover-up completely." (Neff's Depo. at 49.) Neff believed the project was a "money-making deal for some people." (Id.) When asked for whom it was a money-making deal, Neff responded, "Well, whoever the contractors was was making money. * * * I didn't make it. They ruined my land. I feel I got several

thousand dollars of damage, and I think we'll find out someday." (Id.) Neff later reiterated "I feel I have several thousand dollars damage." (Id. at 56.) Neff failed to specify what damages he suffered beyond these general and vague statements and he did not state his basis for his belief.

When questioned directly about damages, Neff's response changed:

"Q. How do you think you've been damaged in this case?

"A. Pardon?

"Q. How do you think you were damaged? I think a couple times you said a couple thousand dollars. I mean, what are you basing that on?

"A. Two million.

"Q. Two million? What's two million?

"A. Well, it caused trouble between me and my wife arguing over this ditch stuff. Me and her have been fighting for three or four years on this stuff. I even bought me a trailer and put it inside a barn and was going to move in." (Neff's Depo. at 66.) For the next three pages of deposition testimony, Watershed's counsel attempted to have Neff state his damages and basis for such. Neff spoke of the friction with his wife, friction with his neighbors because they had paid their bills and he had not, his "shot nerves," and how the situation had affected his mind. (Id. at 66-69.)

{¶44} After a break and consultation with his attorney, Neff noted his farm had been "sectioned" by the waterways and felt that damaged him in some way, but gave no dollar amount and refused to explain how this damaged his real estate. (Id. at 70-71.) Watershed's attorney again asked Neff what damages he had suffered, and Neff responded, "Well, like I said, as far as I'm concerned, I've been damaged in a lot of ways. I lost friends, caused trouble in the family, caused trouble between me and my wife, it has emotionally – upset me emotionally. I'm not retarded, but I have been highly upset. The devil couldn't get along with me for the last three years." (Id. at 73-74.)

{¶45} Despite Watershed's repeated attempts to discern what Neff's damages were and of what they were comprised, Neff refused to directly answer the question, except when stating he believed he suffered $2 million in damages because of the emotional distress he suffered.[3] Neff, however, may not recover damages related to his emotional distress for a breach of contract because there is no evidence he suffered bodily harm and there is no evidence or argument serious emotional distress was likely to occur as the result of the alleged breach.

{¶46} "'Recovery for emotional disturbance will be excluded unless the breach also caused bodily harm or the contract or the breach is of such a kind that serious emotional disturbance was a particularly likely result.'" *Kishmarton* at

---

[3] Though Neff's remark of "Two million" seems facetious, we must view the evidence in a light most favorable to him and assume his response was serious.

230, quoting 3 Restatement of the Law 2d, Contracts (1981) 149, Section 353.

"Comment *a* to this section explains: 'Damages for emotional disturbance are not ordinarily allowed.  Even if they are foreseeable, they are often particularly difficult to establish and to measure.'"  Id.  The Supreme Court of Ohio expressly adopted Section 353 of the Restatement of Law 2d, Contracts (1981), in *Kishmarton*.

{¶47} Though *Kishmarton* involved the sale of a constructed home, the same principle applies to Neff's counterclaims and bars his recovery of $2 million for emotional distress.  Neff suffered no bodily harm and neither the construction of the waterways nor the alleged breach breaches by Watershed were likely to cause serious emotional distress, even if the waterways were improperly constructed.

{¶48} Other than his claimed emotional distress, Neff cited no additional damages he believed he suffered.  Once Watershed pointed to the absence of evidence regarding Neff's damages, Neff had a reciprocal burden to demonstrate that a genuine issue of material fact remained for trial, but Neff produced no evidence in support thereof.  Indeed, Neff did not even address his counterclaims within his memorandum contra, and certainly presented no evidence regarding damages.  Accordingly, Neff did not meet his reciprocal burden under Civ.R. 56 and Watershed is entitled to summary judgment on Neff's counterclaims.  Thus, we affirm the trial court's dismissal of Neff's counterclaims.

## F. Bad Faith

{¶49} In his fourth assignment of error, Neff argues that the trial court erred in finding he acted in bad faith when he withheld Watershed's payment. Specifically, Neff argues that a finding of bad faith is a factual determination and the trial court should not have made a factual finding when ruling on a motion for summary judgment. We agree.

{¶50} "Ohio has long adhered to the 'American rule' with respect to recovery of attorney fees: a prevailing party in a civil action may not recover attorney fees as a part of the costs of litigation." *Wilborn v. Bank One Corp.*, 121 Ohio St.3d 546, 2009-Ohio-306, 906 N.E.2d 396, at ¶7, citing *Nottingdale Homeowners' Assn., Inc. v. Darby* (1987), 33 Ohio St.3d 32, 33-34, 514 N.E.2d 702 and *State ex rel. Beebe v. Cowley* (1927), 116 Ohio St. 377, 382, 156 N.E. 214. "However, there are exceptions to this rule. Attorney fees may be awarded when a statute or an enforceable contract specifically provides for the losing party to pay the prevailing party's attorney fees[.]" Wilborn at ¶7, citing *Nottingdale* at 34. Attorney fees may also be awarded when the prevailing party demonstrates the losing party acted "in bad faith, vexatiously, wantonly, obdurately, or for oppressive reasons." *Sorin v. Bd. of Edn. of Warrensville Hts. School Dist.* (1976), 46 Ohio St.2d 177, 181, 347 N.E.2d 527. Watershed maintains that it may recover

its attorney fees because Neff acted in bad faith in refusing to pay the money owed under the contract for constructing the waterways.

{¶51} "'Bad faith' is a general and somewhat indefinite term.  * * * It imports a dishonest purpose or some moral obliquity.  It implies conscious doing of wrong.  It means a breach of a known duty through some motive of interest or ill will.  It partakes of the nature of fraud. * * * It means 'with actual intent to mislead or deceive another.'"  *Slater v. Motorists Mut. Ins. Co.* (1962), 174 Ohio St. 148, 151, 187 N.E.2d 45 (overruled on other grounds), quoting *Spiegel v. Beacon Participations, Inc.*, 297 Mass. 398, 416, 8 N.E.2d 895.

{¶52} When reviewing whether bad faith exists to justify an award of attorney fees, some appellate courts have made this finding without enunciating a clear standard of review.  In *Sorin*, the Supreme Court of Ohio held a school board, which the trial court had determined had denied a former employee due process, had not acted "in bad faith, vexatiously, wantonly, obdurately, or for oppressive reasons," and attorney fees were not warranted.  See *State ex rel. Bednar v. N. Canton* (1994), 69 Ohio St.3d 278, 284, 631 N.E.2d 621 (finding no "bad faith, vexatious, wanton, obdurate, or oppressive conduct necessary to allow attorney fees"); *Calloway v. Wasik*, 8th Dist. No. 92304, 2009-Ohio-6215, at ¶25 (holding that there was no evidence of bad faith on the part of respondents warranting attorney fees).  See, also, *Clem v. Steiner*, 11th Dist. No. 2002-P-0056, 2003-Ohio-

4865 (affirming trial court's finding that general contractor had acted in bad faith in refusing to pay subcontractor, despite acknowledging duty to do so).

{¶53} This Court, however, in the context of immunity, has held that whether an employee acted in bad faith is generally a question of fact. See *MacCabee v. Mollica*, 4th Dist. No. 09CA32, 2010-Ohio-4310. A court may only award summary judgment on the issue of bad faith when the evidence is clear and undisputed and reasonable minds could only reach one conclusion. Id. ¶17-18. We must remember the standard of review in the instant case though: we view the evidence in a light most favorable to Neff when determining whether a genuine issue of material fact exists.

{¶54} In this case, the evidence is less than clear and we find that the trial court erred in finding Neff acted in bad faith when refusing to pay Watershed. It is true that Neff displayed a moderate amount of cynicism and paranoia during his deposition when stating his belief that the incidents surrounding the Caldwell Road project and the construction of the waterways on his property were part of a "political cover-up." Yet the evidence also revealed that this was not Neff's sole motivation for refusing to pay Watershed. Neff believed that the waterways had been improperly constructed and presented evidence to support this allegation. Though this evidence is incongruent with other evidence, it calls into question whether Watershed had performed its obligations under the contract.

{¶55} Furthermore, the dismissal of Neff's counterclaims does not warrant a finding of bad faith. "The overruling by the courts of the * * * defenses raised by [a party] does not, in and of itself, demonstrate [the party] acted in bad faith. The record must show that each defense was raised by the [party] in bad faith." *State ex rel. Crockett v. Robinson* (1981), 67 Ohio St.2d 363, 369-370, 423 N.E.2d 1099. There can be no finding of bad faith where "the record reveals that the [party was] just insisting upon their right to obtain a legal determination of the adequacy of [its] defenses." Id. at 370. See, also, *State ex rel. Katabek v. Stackhouse* (1983), 6 Ohio St.3d 55, 451 N.E.2d 248 (following *State ex rel. Crockett* and holding that there was no bad faith meriting an award of attorney fees when a party had filed a motion to dismiss, despite the adverse party's assertion that the motion was only filed for the purpose of delay).

{¶56} Again, the evidence is not clear or undisputed, and reasonable minds could reach more than one conclusion when determining whether Neff withheld payment in bad faith. Accordingly, summary judgment on the issue of bad faith is inappropriate and we sustain Neff's fourth assignment of error.

### 3. Res Judicata

{¶57} In his second assignment of error, Neff contends that the trial court erred by failing to apply res judicata, claim preclusion, or collateral estoppel and finding the related matter of *Neff v. Ruff* (Pickaway County Case No. 2007 CI 598)

was dispositive as to a portion of the issues within Watershed's motion for summary judgment. Specifically, Neff argues that the "[t]rial [c]ourt should have determined that there ha[d] been an adjudication of the question of what might be owed for the construction of the Waterways (in the litigation between [Neff] and [Ruff]) and [Watershed's] claims should have been barred by operation of the doctrine of collateral estoppel." (Neff's App. Brief, at 27.) Neff's argument fails, however, because the issues in the instant case do not arise from the same transaction as the prior litigation and were not actually and directly litigated in the prior action.

{¶58} "In Ohio, '[t]he doctrine of res judicata encompasses the two related concepts of claim preclusion, also known as res judicata or estoppel by judgment, and issue preclusion, also known as collateral estoppel.'" *State ex rel. Nickoli v. Erie MetroParks*, 124 Ohio St.3d 449, 2010-Ohio-606, 23 N.E.2d 588, at ¶21, quoting *O'Nesti v. DeBartolo Realty Corp.,* 113 Ohio St.3d 59, 2007-Ohio-1102, 862 N.E.2d 803, at ¶6. "'Claim preclusion prevents subsequent actions, by the same parties or their privies, based upon any claim arising out of a transaction that was the subject matter of a previous action,' whereas issue preclusion, or collateral estoppel, 'precludes the relitigation, in a second action, of an issue that had been actually and necessarily litigated and determined in a prior action that was based on a different cause of action.'" *State ex rel. Nickoli*, at ¶21, quoting *Ft. Frye*

*Teachers Assn., OEA/NEA v. State Emp. Relations Bd.* (1998), 81 Ohio St.3d 392, 395, 692 N.E.2d 140, and citing *Holzemer v. Urbanski* (1999), 86 Ohio St.3d 129, 133, 712 N.E.2d 713. "The determination of whether an action is barred by the claim preclusion aspect of *res judicata* presents a question of law which appellate courts resolve without deference to the trial court's decision although the determination necessarily involves a review of facts." *J.R. Mason, Inc. v. S. Bloomfield* (Apr. 4, 1995), 4th Dist. No. 94CA13, citing *Fields v. Anderson* (Oct. 19, 1994), 2d Dist. No. 14113 and *Orrville Prods., Inc. v. MPI, Inc.* (June 9, 1994), 8th Dist. No. 65184.

{¶59} "Collateral estoppel applies when the fact or issue (1) was actually and directly litigated in the prior action, (2) was determined by a court of competent jurisdiction, and (3) when the party against whom collateral estoppel is asserted was a party, or is in privity with a party, in the prior action." *J.R. Mason, Inc.*, citing *Thompson v. Wing* (1994), 70 Ohio St.3d 176, 183, 637 N.E.2d 917, citing *Whitehead v. Gen. Tel. Co.* (1969), 20 Ohio St.2d 108, 254 N.E.2d 10, at paragraph two of the syllabus. Like claim preclusion, "we review the issue of whether collateral estoppel bars subsequent litigation as a question of law, without deference to the trial court." (Citations omitted.) *J.R. Mason, Inc*.

{¶60} First, claim preclusion does not apply to the instant litigation because Watershed's claims do not arise out of the same transaction as the prior litigation.

The prior litigation "concern[ed] a dispute between parties to a farm lease * * *." (Neff's Memo. Contra Summ. J., Ex. A-2, at 1.) The instant litigation springs from the oral contract between Watershed and Neff, not the farm lease between Neff and Ruff.

{¶61} Second, collateral estoppel does not apply because in the prior litigation, Neff and Ruff did not actually and directly litigate the same issues that appear in the instant litigation. There, "[t]he issue presented to [the] [c]ourt [was] whether [Neff] properly served written notice to [Ruff,] exercising his option to terminate the one-year lease." (Id.) The trial court held the lease was properly terminated and since "the [l]ease was properly and legally terminated, [Ruff was] not entitled to any damages claimed for the alleged improvements made prior to the execution of the [l]ease." (Id. at 8.)

{¶62} Yet there was not a general "adjudication of the question of what might be owed for the construction of the [w]aterways," as Neff suggests. (Neff's App. Brief, 27.) The issues previously litigated were whether Neff had properly terminated a lease with Ruff, and whether the language of the lease precluded Ruff from recovering money for improvements. Absent from the prior litigation was a discussion of whether Neff had a contract with Watershed, whether Neff owed Watershed money for constructing the waterways, or whether the waterways were properly constructed. Thus, the issues in the present litigation were not actually

and directly litigated in the prior action and collateral estoppel does not bar Watershed's claims. Accordingly, we overrule Neff's second assignment of error.

4. The Motion to Intervene

{¶63} In his third assignment of error, Neff argues that the trial court erred in denying STEW's motion to intervene. We find that Neff does not have standing to raise this assignment of error and we consequently overrule it.

{¶64} "To have standing, the general rule is that 'a litigant must assert its own rights, not the claims of third parties.'" *Util. Serv. Partners, Inc. v. Pub. Utils. Comm. of Ohio*, 124 Ohio St.3d 284, 2009 -Ohio- 6764, 921 N.E.2d 1038, at ¶49, quoting *N. Canton v. Canton,* 114 Ohio St.3d 253, 2007-Ohio-4005, 871 N.E.2d 586, at ¶14. See, also, *Save the Lake v. Hillsboro*, 158 Ohio App.3d 318, 2004-Ohio-4522, 815 N.E.2d 706, at ¶8. "Third-party standing is 'not looked favorably upon,' but it may be granted 'when a claimant (i) suffers its own injury in fact, (ii) possesses a sufficiently "'close' relationship with the person who possesses the right," and (iii) shows some "hindrance" that stands in the way of the claimant seeking relief.'" (Internal citation omitted.) *Util. Serv. Partners, Inc.* at ¶49, quoting *E. Liverpool v. Columbiana Cty. Budget Comm.,* 114 Ohio St.3d 133, 2007-Ohio-3759, 870 N.E.2d 705, ¶22, quoting *Kowalski v. Tesmer* (2004), 543 U.S. 125, 130, 125 S.Ct. 564, 160 L.Ed.2d 519.

{¶65} Here, Neff argues that the trial court erred when it denied STEW's motion to intervene. Yet Neff does not have standing to argue STEW's intervention rights on appeal. Neff has not established that he meets the aforementioned requirements to assert third-party standing on STEW's behalf. Accordingly, we hold that Neff does not possess standing to dispute the trial court's denial of STEW's motion to intervene and we overrule Neff's third assignment of error.

### 5. Due Process

{¶66} In his seventh assignment of error, Neff argues that the trial court erred when it granted Watershed's motion for a final judgment entry without permitting Neff an opportunity to respond. We agree.

{¶67} "The fundamental requirements of due process are notice and an opportunity to be heard at a meaningful time and manner." *Carver v. Map Corp.*, 4th Dist. No. 01CA2757, 2001-Ohio-2403, citing *State v. Hochhausler* (1996), 76 Ohio St.3d 455, 459, 668 N.E.2d 457 and *In re Adoption of Zschach* (1996), 75 Ohio St.3d 648, 653, 665 N.E.2d 1070. Specifically, we have held that "the party against whom [a] motion is made 'is entitled to sufficient notice and time to prepare for the hearing in order to avoid undue prejudice.'" *McGlone v. Grimshaw* (1993), 86 Ohio App.3d 279, 283, 620 N.E.2d 935, quoting *In re Foreclosure of Liens for Delinquent Taxes* (1992), 79 Ohio App.3d 766, 771, 607 N.E.2d 1160.

"However hurried a court may be in its efforts to reach the merits of a controversy, the integrity of procedural rules is dependent upon consistent enforcement because the only fair and reasonable alternative thereto is complete abandonment." *Miller v. Lint* (1980), 62 Ohio St.2d 209, 215, 404 N.E.2d 752. "[I]f a trial court disregards the response time created by the Ohio Rules of Civil Procedure, that court has committed reversible error," absent a showing that the error was harmless. *Gibson-Myers & Assoc. v. Pearce* (Oct. 27, 1999), 9th Dist. No. 19358, citing *In re Foreclosure of Liens*, 79 Ohio App.3d at 771-772. See *Bank of Am. v. Litteral*, 191 Ohio App.3d 303, 2010-Ohio-5884, 945 N.E.2d 1114, at ¶ 24 (holding trial court ruling on summary judgment before appellant's deadline to respond was reversible error); *Cuervo v. Snell* (Sept. 26, 2000), 10th Dist. Nos. 99AP-1442, 99AP-1443, 99AP-1458 (holding trial court ruling on motion to compel before adverse party had an opportunity to respond was reversible error). But, accord, *Entingh v. Old Man's Cave Chalets, Inc.*, 4th Dist. No. 08CA14, 2009-Ohio-2242, at ¶21-22 (holding that ruling on motion to compel before adverse party had an opportunity to respond was harmless error because the court had considered the party's counterargument in a subsequent motion to vacate the premature ruling).

{¶68} Civ.R. 6(D) provides that a written motion, other than one that may be heard ex parte, must be served at least seven days before the hearing on the matter,

unless the court modifies this period. A court may adopt a different timeline by local rule. Civ.R. 7(B)(2); Section 5(B), Article IV, Ohio Constitution; Sup.R. 5(A); and *Hillabrand v. Drypers Corp.*, 87 Ohio St.3d 517, 2000-Ohio-468, 721 N.E.2d 1029. Loc.R. 6.08 of the Pickaway County Court of Common Pleas provides that following the filing of a motion, "opposing counsel or a party may file an answer brief by the fourteenth (14th) day after the date of service as set forth on the certificate of service attached to the served copy of the motion. * * * On the 28th day after the motion is filed, the motion shall be deemed submitted."

In this case, events occurred as follows:

| | |
|---|---|
| 11/03/10 | Watershed served Neff a copy of its Motion for Entry of Final Judgment |
| 11/04/10 | Watershed filed its Motion for Entry of Final Judgment |
| 11/16/10 | The trial court filed its Final Judgment Entry |
| 11/18/10 | Neff filed his memorandum contra the motion for entry of final judgment |
| 11/20/10 | Neff's deadline to file his memorandum contra[4] |
| 12/02/10 | Motion deemed submitted for ruling |

**{¶69}** Clearly, the trial court's ruling on Watershed's motion for entry of a final judgment was premature. The trial court ruled on Watershed's motion before Neff was given an opportunity to be heard on the matter.[5] Nothing in the record compels a finding that this error was harmless. To the contrary, the trial court's premature ruling deprived Neff of an opportunity to be heard on the issues of

---

[4] Watershed served its motion by mail, giving Neff an additional three days to respond, per Civ.R. 6(E).

[5] As the timeline reveals, the trial court's ruling also occurred before the matter was deemed submitted, in contravention to its own local rule.

attorney fees and costs, which denied Neff due process. Because of this error, we sustain Neff's seventh assignment of error. Consequently, Neff's fifth and sixth assignments of error are rendered moot.

**JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND THE CAUSE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

Kline, J., concurring.

{¶70}I respectfully concur in judgment only with the resolution of Neff's fourth assignment of error. In my view, a trial court's award of attorney fees based upon a litigant's bad faith should be reviewed under an abuse of discretion standard. *See, e.g.*, *Gevedon v. Gevedon*, 167 Ohio App.3d 1, 2006-Ohio-2668, 853 N.E.2d 718, ¶ 33 (2d Dist.); *Lima Pub. Lib. Bd. of Trustees v. State Emp. Relations Bd.*, 3d Dist. App. No. 1-10-51, 2011-Ohio-1730, ¶ 39; *Leh Properties v. Pheasant Run Assoc.*, 9th Dist. No. 10CA009780, 2011-Ohio-516, ¶ 22; *J.D. Harper v. Dog Town, Inc.*, 7th Dist. No. 08 NO 348, 2008-Ohio-6921, ¶ 27; *Pasco v. State Auto. Mut. Ins. Co.*, 10th Dist. No. 04AP-696, 2005-Ohio-2387, ¶ 9.

{¶71}I concur in judgment and opinion with the resolution of Neff's other assignments of error. That is, the first, second, third, fifth, sixth, and seventh assignments of error.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED IN PART, REVERSED IN PART, AND THE CAUSE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION and that the Appellee and the Appellant split the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Pickaway County Common Pleas Court to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.

Abele, P.J.: Concurs in Judgment and Opinion.
Kline, J.: Concurs in Judgment and Opinion as to Assignments of Error I, II, III, V, VI & VII and Concurs in Judgment Only with Opinion as to Assignment of Error IV.

For the Court,


BY:  _____
Matthew W. McFarland, Judge


## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**